UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

FRANCO P. CERABONA, MD and
ANDREW MEROLA, MD,

        Plaintiffs,

           v.

MEDLINK SERVICES, INC., MEDLINK
PARTNERS, LLC, AMRISH PATEL, MALA
PATEL, and HEMANSHU PATEL,

        Defendants.

---------------------------------------------------------------X

Civ. Action No.:

**COMPLAINT**

Jury Trial Demanded

    Plaintiffs Franco P. Cerabona, MD ("Dr. Cerabona") and Andrew Merola, MD ("Dr. Merola") (sometimes collectively referred to herein as "plaintiffs"), by and through their attorneys, Ford Marrin Esposito Witmeyer & Gleser, LLP, as and for their Complaint against the defendants, Medlink Services, Inc. ("Medlink Services"), Medlink Partners, LLC ("Medlink Partners"), Amrish Patel ("Amrish"), Mala Patel ("Mala"), and Hemanshu Patel ("Hem") (sometimes collectively referred to herein as "defendants"), allege as follows:

### NATURE OF THE ACTION

    1.    This case involves fraud and other wrongful conduct committed by a medical billing company, Medlink Services, its affiliate, Medlink Partners, and their respective principals, Amrish, Mala, and Hem.

    2.    Upon information and belief, Medlink Services is owned, operated, and/or controlled by Amrish and Mala.

    3.    Upon information and belief, Medlink Partners is owned, operated, and/or controlled by Amrish and Hem.

4. Plaintiffs are orthopedic surgeons who retained Medlink Services to bill insurance companies on their behalf, for medical services that plaintiffs provided to their patients.

5. This is not, however, the "classic" case of medical billing fraud, whereby the medical billing company defrauds an insurance company by either submitting claims for procedures or tests that were never performed, or by "upcoding" those medical services that were performed. To the contrary, here, the medical services were actually performed by the plaintiffs, and the claim forms submitted to the insurance companies were, upon information and belief, properly coded.

6. In this case, however, the plaintiffs, not the insurance companies, were the targets of defendants' billing scheme, which was implemented by defendants on numerous occasions over at least the past eight (8) years.

7. Plaintiffs discovered defendants' billing scheme on or about November 26, 2018.

8. Upon information and belief, defendants perpetrated their billing scheme as follows:

a. With respect to medical services, including orthopedic surgeries, that plaintiffs provided to their patients, Medlink Services, under the direction of Amrish and/or Mala, agreed to prepare health insurance claim forms and submit those forms on behalf of plaintiffs to insurance companies so that plaintiffs could be compensated.

b. As part of its agreement to prepare health insurance claim forms and submit them to insurance companies on behalf of plaintiffs, Medlink Services was to identify plaintiffs on the foregoing claim forms as the recipients of the payments to be made by the insurance companies.

2

c.  However, upon information and belief, Medlink Services conspired with the other defendants to identify Medlink Services or Medlink Partners as the payment recipient on these claim forms prior to submission to the insurance companies.

d.  Upon information and belief, on a number of occasions dating back to at least 2011, Amrish and/or Mala prepared and submitted these claim forms which intentionally misidentified either Medlink Services or Medlink Partners as the payment recipient rather than plaintiffs.

e.  As a result of Medlink Services, Amrish, and Mala misidentifying the payment recipient on these claim forms, the insurance companies paid Medlink Services or Medlink Partners, and not plaintiffs, for medical services provided by plaintiffs. (Hereinafter, the actions engaged in by defendants as set forth in subparagraphs a-e shall be referred to as the "Billing Scheme.")

9.  By falsifying the claim forms submitted to the insurance companies, defendants intentionally diverted from plaintiffs compensation rightfully belonging to plaintiffs, and deposited the diverted funds into their own bank accounts.

10.  Medlink Services, Amrish, and Mala submitted the falsified claim forms without the knowledge or consent of plaintiffs.

11.  None of the defendants have reimbursed plaintiffs for the compensation that defendants wrongfully diverted to themselves.

12.  Defendants have abused their positions of trust, have defrauded the plaintiffs out of over $2 million, have been unjustly enriched by their wrongful conduct at plaintiffs' expense, and have otherwise breached the obligations they owed plaintiffs.

3

13. Defendants consciously disregarded the rights of Dr. Cerabona and Dr. Merola when they diverted to themselves over $2 million in payments intended for Dr. Cerabona and Dr. Merola.

## THE PARTIES

14. Plaintiff Franco Cerabona, MD is an individual residing in the State of New York, County of New York.

15. At all times herein mentioned, Dr. Cerabona is and has been a Board Certified Orthopedic Surgeon, consulting with patients and performing medical services, including orthopedic surgeries, at hospitals located in New York City.

16. Plaintiff Andrew Merola, MD is an individual residing in the State of New York, County of Kings.

17. At all times herein mentioned, Dr. Merola is and has been a Board Certified Orthopedic Surgeon, consulting with patients and performing medical services, including orthopedic surgeries, at hospitals located in New York City.

18. Upon information and belief, at all times herein mentioned, defendant Medlink Services was and is a corporation formed under the laws of the State of New Jersey, maintaining its principal place of business at 284B Main Street, Spotswood, NJ 08884.

19. Upon information and belief, at all times herein mentioned, Medlink Services was and is a medical billing company in the business of preparing and submitting health insurance claims to insurance companies on behalf of its medical provider clients, including plaintiffs.

20. At all times herein mentioned, plaintiffs were clients of Medlink Services.

21. Upon information and belief, Medlink Services obtained a National Provider Identifier ("NPI") number by claiming to be a provider of legal medicine.

4

22.     Upon information and belief, Medlink Services is not a provider of legal medicine, and is not otherwise a medical provider.

23.     Upon information and belief, an NPI is a unique 10-digit identification number issued to healthcare providers in the United States by the Centers for Medicare & Medicaid Services, and is the required identifier for Medicare Services, and is used by other medical payors, including commercial healthcare insurers.

24.     Upon information and belief, at all times herein mentioned, defendant Medlink Partners was and is a limited liability company formed under the laws of the State of New Jersey, maintaining its principal place of business in the same location as Medlink Services, *i.e.*, 284B Main Street, Spotswood, NJ 08884.

25.     Upon information and belief, Medlink Partners is in the Information Technology ("IT") business and provides certain medical billing services.

26.     At all times herein mentioned, Dr. Merola was an IT client of Medlink Partners.

27.     Upon information and belief, Medlink Partners obtained an NPI number by claiming to be a supplier of durable medical equipment and medical supplies.

28.     Upon information and belief, Medlink Partners is not a supplier of durable medical equipment and medical supplies, and is not otherwise a medical provider.

29.     Upon information and belief, at all times herein mentioned, defendant Amrish is an individual who resides in the State of New Jersey.

30.     Upon information and belief, at all times herein mentioned, defendant Mala is an individual who resides in the State of New Jersey.

31.     Upon information and belief, at all times herein mentioned, defendant Hem is an individual who resides in the State of New Jersey.

5

32.     Upon information and belief, at all times herein mentioned, each of the defendants transacted business in the Southern District of New York.

33.     Upon information and belief, at all times herein mentioned, Amrish managed the operations of Medlink Services, and personally performed or directed the billing services provided to plaintiffs.

34.     Upon information and belief, at all times herein mentioned, Mala was and is the owner of Medlink Services.

35.     Upon information and belief, at all times herein mentioned, only Amrish and Mala could deposit or withdraw funds from Medlink Services' bank account(s).

36.     Upon information and belief, at all times herein mentioned, Amrish and Mala together exercised complete domination over Medlink Services and used this domination to perpetrate the Billing Scheme, causing plaintiffs pecuniary injury.

37.     Upon information and belief, at all times herein mentioned, Medlink Services and Medlink Partners shared common office space in Spotswood, New Jersey, as well as common telephone and facsimile numbers.

38.     Upon information and belief, at all times herein mentioned, Amrish and Hem jointly owned and controlled Medlink Partners.

39.     Upon information and belief, at all times herein mentioned, only Amrish and Hem could deposit or withdraw funds from Medlink Partners' bank account(s).

40.     Upon information and belief, at all times herein mentioned, Amrish and Hem together exercised complete domination over Medlink Partners and used this domination to perpetrate the Billing Scheme, causing plaintiffs pecuniary injury.

6

41.     Upon information and belief, at all times herein mentioned, Amrish, Mala, and Hem blurred the legal distinctions between Medlink Services and Medlink Partners by jointly operating the two Medlink entities as the instruments through which to funnel insurance payments intended for plaintiffs to defendants instead.

42.     Upon information and belief, at all times herein mentioned, Amrish, Mala, and Hem implemented the Billing Scheme through their domination of Medlink Services and Medlink Partners, respectively, abused the privilege of doing business in the corporate form in order to perpetrate fraud against the plaintiffs, abused their positions of trust and ignored their obligations to plaintiffs, such that they are not shielded from liability by the corporate form.

### JURISDICTION AND VENUE

43.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as this case involves a dispute between citizens of different states and because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

44.     Venue is properly in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, or a substantial part of the property that is the subject of the action is situated in this district.

### FACTS COMMON TO ALL COUNTS

45.     Dr. Cerabona performs orthopedic surgeries at several hospitals located in New York City, including Mount Sinai Hospital Health System; New York-Presbyterian Lower Manhattan Hospital; and New York-Presbyterian Brooklyn Methodist Hospital.

46.     Dr. Merola performs orthopedic surgeries at several hospitals located in New York City, including Mount Sinai Hospital Health System; New York-Presbyterian Lower

Manhattan Hospital; New York-Presbyterian Brooklyn Methodist Hospital; and SUNY Downstate Medical Center.

47.     In addition to his individual practice, Dr. Cerabona also assists Dr. Merola on certain orthopedic surgeries at Mount Sinai Hospital Health System; New York-Presbyterian Lower Manhattan Hospital; and New York-Presbyterian Brooklyn Methodist Hospital.

48.     As is the case for most physicians, much of plaintiffs' compensation for the medical services they render comes from payment of claims submitted to insurance companies.

49.     One of the claim forms submitted to insurance companies for this purpose is the "Health Care Finance Administration form no. 1500," commonly referred to as "HCFA 1500". The HCFA 1500 form contains a series of boxes that the medical provider or its billing service fills out for submission to insurance companies. Those boxes seek information about the patient, the specific medical services provided, and who provided the medical services.

50.     Box 33 of the HCFA 1500 form seeks information as to where and to whom the insurance company should send payment for the services referenced in the form, including the name, address, telephone number, and NPI number of the medical provider.

51.     In light of the time-consuming nature of preparing and submitting health insurance claim forms, plaintiffs retained Medlink Services to prepare and submit those forms to insurance companies on their behalf.

52.     Under the terms of their agreement, Medlink Services was to identify Dr. Cerabona or Dr. Merola in Box 33 of the HCFA 1500 as the person to whom the insurance companies should make payment.

53.     Upon information and belief, on numerous occasions since at least 2011, defendants falsified the HCFA 1500 forms submitted on behalf of Dr. Cerabona and Dr. Merola

8

by identifying Medlink Services or Medlink Partners in Box 33 as the party to which payment should be made.

54.     Upon information and belief, as a result of these falsified HCFA 1500 forms, defendants were able to divert to themselves in excess of $2 million in compensation that belonged to, and was intended for, plaintiffs.

55.     For 2018 alone, plaintiffs have, to date, identified twenty-eight (28) orthopedic surgeries performed by Dr. Cerabona and/or Dr. Merola for which defendants submitted falsified HCFA 1500 forms to insurance companies, wrongfully identifying either Medlink Services or Medlink Partners as the payment recipient thereon.

56.     Because defendants wrongfully identified either Medlink Services or Medlink Partners on the HCFA 1500 claims forms as the party to which payment should be made for those twenty-eight (28) orthopedic surgeries, Medlink Services and Medlink Partners received $407,775.05 in payments from insurance companies, rather than plaintiffs, the rightful payees who actually performed the orthopedic surgeries for which those payments were made.

57.     The following are examples of some of the twenty-eight (28) surgeries in 2018, for which defendants wrongfully diverted compensation belonging to plaintiffs to themselves, and are representative of the Billing Scheme defendants have engaged in since at least 2011, which has been detrimental to plaintiffs' pecuniary interests:

### a.     As to Payment for Medical Services Rendered to Patient "A"[1]

i.     Dr. Merola and Dr. Cerabona performed orthopedic surgery on Patient A at New York Presbyterian-Lower Manhattan Hospital during 2018.

---

[1] The patient names and other identifiers, as well as the date of surgery and type of surgery performed have been omitted from this complaint in order to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

ii.      Upon information and belief, defendants submitted HCFA forms to Sedgwick Claims Management Services ("Sedgwick") for the orthopedic surgery Dr. Merola and Dr. Cerabona performed on Patient A.

iii.      Upon information and belief, defendants intentionally inserted the name, address, telephone number, and NPI number of defendant Medlink Partners in Box 33 of the HCFA 1500 forms that they submitted to Sedgwick, rather than the name, addresses, telephone numbers, and NPI numbers of Dr. Merola and Dr. Cerabona, as they agreed to do and should have done.

iv.      Upon information and belief, because defendants misidentified Medlink Partners as the "provider" in Box 33 of the HCFA 1500 forms submitted with respect to the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient A, Sedgwick issued the checks for that surgery payable to Medlink Partners rather than to Dr. Merola and Dr. Cerabona, the rightful payees thereto.

v.      Upon information and belief, Sedgwick issued check number 75523068 payable to Medlink Partners in the amount of $13,296.83 as compensation intended for Dr. Merola, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient A.

vi.      Upon information and belief, Sedgwick issued check number 75523575 payable to Medlink Partners in the amount of $2,118.78 as compensation intended for Dr. Cerabona, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient A.

vii.    Upon information and belief, defendants deposited the two checks in the amounts of $13,296.83 and $2,118.70, respectively, into a bank account maintained by them.

viii.    To date, defendants have not reimbursed Dr. Merola or Dr. Cerabona the proceeds of Sedgwick's $13,296.83 and $2,118.70 payments, which were intended to compensate Dr. Merola and Dr. Cerabona, respectively, for the orthopedic surgery they performed on Patient A, and which rightfully belong to them.

**b.**    **As to Payment for Medical Services Rendered to Patient "B"**

i.    Dr. Merola and Dr. Cerabona performed orthopedic surgery on Patient B at New York-Presbyterian Lower Manhattan Hospital during 2018.

ii.    Upon information and belief, defendants submitted HCFA 1500 forms to Travelers Property Casualty Company of America ("Travelers") for this orthopedic surgery performed by Dr. Merola and Dr. Cerabona.

iii.    Upon information and belief, defendants intentionally inserted Medlink Services' name, address, telephone number, and NPI number in Box 33 of the HCFA 1500 forms that they submitted to Travelers, rather than the names, addresses, telephone numbers, and NPI numbers of Dr. Merola and Dr. Cerabona, as they agreed to do and should have done.

iv.    Upon information and belief, because defendants misidentified Medlink Services as the "provider" in Box 33 of the HCFA 1500 forms submitted with respect to the orthopedic surgery performed by Dr. Merola and Dr. Cerabona, Travelers issued the checks for this surgery payable to Medlink Services, rather than to Dr. Merola and Dr. Cerabona, the rightful payees thereof.

11

v.     Upon information and belief, Travelers issued check number 0089085254 payable to Medlink Services in the amount of $15,816.35, as compensation intended for Dr. Merola, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient B.

vi.     Upon information and belief, Travelers issued check number 0089085253 payable to Medlink Services in the amount of $2,541.58, as compensation intended for Dr. Cerabona, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient B.

vii.     Upon information and belief, defendants endorsed and deposited the two checks in the amounts of $15,816.35 and $2,541.58, respectively, into a bank account maintained by Medlink Services at Amboy Bank.

viii.     To date, defendants have not reimbursed Dr. Merola or Dr. Cerabona the proceeds of Travelers' $15,816.35 and $2,541.58 payments, which were intended to compensate Dr. Merola and Dr. Cerabona, respectively, for the orthopedic surgery they performed on Patient B, and which rightfully belong to them.

## c.     As to Payment for Medical Services Rendered to Patient "C"

i.     Dr. Merola and Dr. Cerabona performed orthopedic surgery on Patient C at New York-Presbyterian Lower Manhattan Hospital during 2018.

ii.     Upon information and belief, defendants submitted HCFA 1500 forms to the New York State Insurance Fund ("NYSIF") for the orthopedic surgery Dr. Merola and Dr. Cerabona performed on Patient C.

iii.     Upon information and belief, defendants intentionally inserted Medlink Services' name, address, telephone number, and NPI number in Box 33 of the HCFA

12

1500 forms that they submitted to NYSIF, rather than the names, addresses, telephone numbers, and NPI numbers of Dr. Merola and Dr. Cerabona, as they agreed to do and should have done.

iv.    Upon information and belief, because defendants misidentified Medlink Services as the "provider" in Box 33 of the HCFA 1500 forms submitted with respect to the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient C, NYSIF issued the checks for this surgery payable to Medlink Services, rather than to Dr. Merola and Dr. Cerabona, the rightful payees thereof.

v.    Upon information and belief, NYSIF issued check number 62469729 payable to Medlink Services in the amount of $4,461.70, as compensation intended for Dr. Merola, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient C.

vi.    Upon information and belief, NYSIF issued check number 62168526 payable to Medlink Services in the amount of $1,867.94, as compensation intended for Dr. Cerabona, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient C.

vii.    Upon information and belief, defendants endorsed and deposited the two checks in the amounts of $4,461.70 and $1,867.94, respectively, into a bank account maintained by them.

viii.    To date, defendants have not reimbursed Dr. Merola or Dr. Cerabona the proceeds of NYSIF's $4,461.70 and $1,867.94 payments, which were intended to compensate Dr. Merola and Dr. Cerabona, respectively, for the orthopedic surgery they performed on Patient C, and which rightfully belong to them.

**d.**      **As to Payment for Medical Services Rendered to Patient "D"**

i.      Dr. Merola and Dr. Cerabona performed orthopedic surgery on Patient D at Mount Sinai Hospital Health System during 2018.

ii.      Upon information and belief, defendants submitted HCFA 1500 forms to Travelers for the orthopedic surgery Dr. Merola and Dr. Cerabona performed on Patient D.

iii.      Upon information and belief, defendants intentionally inserted Medlink Partners' name, address, telephone number, and NPI number in Box 33 of the HCFA 1500 forms that they   submitted to Travelers, rather than the names, addresses, telephone numbers, and NPI numbers of Dr. Merola and Dr. Cerabona, as they agreed to do and should have done.

iv.      Upon information and belief, because defendants misidentified Medlink Partners as the "provider" in Box 33 of the HCFA 1500 form submitted with respect to the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient D, Travelers issued the checks for that surgery payable to Medlink Partners, rather than to Dr. Merola and Dr. Cerabona, the rightful payees thereof.

v.      Upon information and belief, Travelers issued check number 0091105148 payable to Medlink Partners in the amount of $13,241.95, as compensation intended for Dr. Merola, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient D.

vi.      Upon information and belief, Travelers issued check number 00911101598 payable to Medlink Partners in the amount of $2,061.15, as compensation

14

intended for Dr. Cerabona, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient D.

       vii.     Upon information and belief, defendants endorsed and deposited the two checks in the amounts of $13,241.95 and $2,061.15, respectively, into a bank account maintained by them.

       viii.    To date, defendants have not reimbursed Dr. Merola or Dr. Cerabona the proceeds of Travelers' $13,241.95 and $2,061.15 payments, which were intended to compensate Dr. Merola and Dr. Cerabona, respectively, for the orthopedic surgery they performed on Patient D, and which rightfully belong to them.

**e.**      **As to Payment for Medical Services Rendered to Patient "E"**

       i.      Dr. Merola and Dr. Cerabona performed orthopedic surgery on Patient E at Mount Sinai Hospital Health System during 2018.

       ii.     Upon information and belief, defendants submitted HCFA forms to NYSIF for the orthopedic surgery Dr. Merola and Dr. Cerabona performed on Patient E.

       iii.    Upon information and belief, defendants intentionally inserted the name, address, telephone number, and NPI number of defendant Medlink Services in Box 33 of the HCFA 1500 forms that they submitted to NYSIF, rather than the name, addresses, telephone numbers, and NPI numbers of Dr. Merola and Dr. Cerabona, as they agreed to do and should have done.

       iv.    Upon information and belief, because defendants misidentified Medlink Services as the "provider" in Box 33 of the HCFA 1500 forms submitted with respect to this orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient E, NYSIF

issued checks for the surgery payable to Medlink Services rather than to Dr. Merola and Dr. Cerabona, the rightful payees thereof.

v.     Upon information and belief, NYSIF issued check number 62722933 payable to Medlink Services in the amount of $16,423.30 as compensation intended for Dr. Merola, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient E.

vi.    Upon information and belief, NYSIF issued check number 62695648 payable to Medlink Services in the amount of $3,445.10 as compensation intended for Dr. Cerabona, for the orthopedic surgery performed by Dr. Merola and Dr. Cerabona on Patient E.

vii.   Upon information and belief, defendants deposited the two checks in the amounts of $16,423.30 and $3,445.10, respectively, into a bank account maintained by them.

viii.  To date, defendants have not reimbursed Dr. Merola or Dr. Cerabona the proceeds of NYSIF's $16,423.30 and $3,445.10 payments, which were intended to compensate Dr. Merola and Dr. Cerabona, respectively, for the orthopedic surgery they performed on Patient E, and which rightfully belong to them.

## AS AND FOR A FIRST CAUSE OF ACTION
### FRAUD
(Against All Defendants)

58.    Plaintiffs repeat and reallege paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59.     As described in detail above, plaintiffs relied upon defendants' false representations that they would submit plaintiffs' claims to insurance companies accurately and honestly, including identifying plaintiffs as the payees thereon.

60.     Upon information and belief, for a number of these claims, however, and as set forth in detail above, defendants submitted HCFA forms to insurance companies specifically misrepresenting that payment for medical services performed by plaintiffs should be made to Medlink Services or Medlink Partners, rather than to plaintiffs.

61.     Defendants' false representations to plaintiffs were material because the entire basis for defendants' involvement with plaintiffs' insurance claims was for defendants to assist plaintiffs in recovering the insurance compensation for medical services provided by plaintiffs, to which plaintiffs were entitled.

62.     Upon information and belief, on the HCFA forms that defendants completed and submitted to insurance companies, they  intentionally misidentified defendant Medlink Services or defendant Medlink Partners as the proper payee of the compensation for certain medical services, including orthopedic surgeries, provided by plaintiffs.

63.     Defendants' misrepresentations were fraudulent because defendants knew that Medlink Services and/or Medlink Partners had no legitimate claim to compensation for medical services, including orthopedic surgeries, provided by plaintiffs.

64.     As a direct result of defendants' fraudulent actions as described above, Dr. Cerabona suffered actual pecuniary losses in an amount believed to exceed $300,000, representing the aggregate amount of paid insurance claims which defendants intentionally diverted from the rightful payee, Dr. Cerabona, and deposited into their own bank accounts, exclusive of interest, costs, and attorneys' fees.

17

65.     As a direct result of defendants' fraudulent actions as described above, Dr. Merola suffered actual pecuniary losses in an amount believed to exceed $1.7 million, representing the aggregate amount of paid insurance claims which defendants intentionally diverted from the rightful payee, Dr. Merola, and deposited into their own bank accounts, exclusive of interest, costs, and attorneys' fees.

66.     Defendants consciously disregarded the rights of Dr. Cerabona and Dr. Merola when they stole payments intended for Dr. Cerabona and Dr. Merola.

### AS AND FOR A SECOND CAUSE OF ACTION
### CONVERSION
(Against All Defendants)

67.     Plaintiffs repeat and reallege paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68.     Plaintiffs were entitled to the compensation from the insurance companies in connection with medical services, including orthopedic surgeries, provided by plaintiffs, as described above.

69.     Defendants, intentionally and without authorization, interfered with plaintiffs' right to this compensation by directing the insurance companies to issue payment to Medlink Services and/or Medlink Partners for medical services provided by plaintiffs, rather than to plaintiffs, the rightful payees of such compensation.

70.     Defendants accepted and retained the compensation intended for and rightfully due to plaintiffs, depriving plaintiffs of possession and use of this money.

71.     Defendants' intentional and wrongful conduct caused actual, known damages to Dr. Cerabona in an amount believed to exceed $300,000, representing the aggregate amount of

paid insurance claims which defendants diverted from the rightful owner, Dr. Cerabona, and deposited into their own bank accounts, exclusive of interest, costs, and attorneys' fees.

72.     Defendants' intentional and wrongful conduct caused actual, known damages to Dr. Merola in an amount believed to exceed $1.7 million, representing the aggregate amount of paid insurance claims which defendants diverted from the rightful owner, Dr. Merola, and deposited into their own accounts, exclusive of interest, costs, and attorneys' fees.

73.     Defendants consciously disregarded the rights of Dr. Cerabona and Dr. Merola when they converted for themselves payments intended for, and rightfully belonging to, Dr. Cerabona and Dr. Merola.

## AS AND FOR A THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
(Against All Defendants)

74.     Plaintiffs repeat and reallege paragraphs 1 through 73 of this Complaint as though fully set forth herein.

75.     At the expense of plaintiffs, defendants have been unjustly enriched by their wrongful conduct in falsifying the HCFA 1500 forms so that insurance companies would issue payment to defendants for medical services performed by plaintiffs.

76.     Defendants had and have no legal right to these payments.

77.     Upon information and belief, defendants deposited and/or cashed the checks received from the insurance company payors and retained these amounts, which rightfully belong to plaintiffs.

78.     Plaintiffs have suffered damages as a result of defendants' wrongful conduct. Dr. Cerabona has suffered damages in an amount believed to exceed $300,000, and Dr. Merola has

19

suffered damages in an amount believed to exceed $1.7 million, exclusive of interest, costs, and attorneys' fees.

79.     It would be inequitable for defendants to retain the payments intended for plaintiffs.

## AS AND FOR A FOURTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
(Against Defendants Medlink Services, Inc., Amrish Patel, and Mala Patel)

80.     Plaintiffs repeat and reallege paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81.     Plaintiffs entrusted Medlink Services and its principals, Amrish and Mala, to prepare and submit to insurance companies on plaintiffs' behalf claims for payment of medical services rendered by plaintiffs.

82.     Upon information and belief, Medlink Services, Amrish, and Mala breached this trust by falsifying the insurance claims which they were entrusted to prepare and submit, in order to direct payment to Medlink Services and/or its affiliated entity, Medlink Partners, instead of to plaintiffs, the rightful payees thereof.

83.     As a direct result of defendants' misconduct, Dr. Cerabona has been damaged in an amount believed to exceed $300,000, representing the aggregate amount of paid insurance claims which defendants diverted from the rightful owner, Dr. Cerabona, and deposited into their own bank accounts, exclusive of interest, costs, and attorneys' fees.

84.     As a direct result of defendants' misconduct, Dr. Merola has been damaged in an amount believed to exceed $1.7 million, representing the aggregate amount of paid insurance claims which defendants diverted from the rightful owner, Dr. Merola, and into their own bank accounts, exclusive of interest, costs, and attorneys' fees.

20

## AS AND FOR A FIFTH CAUSE OF ACTION
### BREACH OF CONTRACT
(Against Defendants Medlink Services, Inc., Amrish Patel, and Mala Patel)

85.     Plaintiffs repeat and reallege paragraphs 1 through 84 of this Complaint as though fully set forth herein.

86.     Defendant Medlink Services, through its principals, Amrish and Mala, agreed to perform medical billing services for Dr. Cerabona and Dr. Merola, in exchange for monthly payment by Dr. Cerabona and Dr. Merola, respectively.

87.     Medlink Services, through its principals, Amrish and Mala, agreed to include the payment recipient address indicated by Dr. Cerabona (*i.e.*, Dr. Cerabona's address) on all insurance claims submitted on behalf of Dr. Cerabona.

88.     Medlink Services, through its principals, Amrish and Mala, agreed to include the payment recipient address indicated by Dr. Merola (i.e., Dr. Merola's address) on all insurance claims submitted on behalf of Dr. Merola.

89.     Plaintiffs performed under their respective contracts by paying Medlink Services' monthly invoices.

90.     Medlink Services, Amrish, and Mala breached their contract with Dr. Cerabona by identifying Medlink Services or Medlink Partners, and their shared address, as the entity and place to which payments were to be sent, rather than to Dr. Cerabona.

91.     Medlink Services, Amrish, and Mala breached their contract with Dr. Merola by identifying Medlink Services or Medlink Partners, and their shared address, as the entity and place to which payments were to be sent, rather than to Dr. Merola.

92.     Defendants' breach of contract has damaged Dr. Cerabona in an amount believed to exceed $300,000, which represents the aggregate amount of paid insurance claims which

defendants diverted from the rightful owner, Dr. Cerabona, and deposited into their own bank accounts, exclusive of interest, costs, and attorneys' fees.

93.    Defendants' breach of contract has damaged Dr. Merola in an amount believed to exceed $1.7 million, which represents the aggregate amount of paid insurance claims which defendants diverted from the rightful owner, Dr. Merola, and deposited into their own bank accounts, exclusive of interest, costs, and attorneys' fees.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING IN CONTRACT**
(Against Defendants Medlink Services, Inc., Amrish Patel, and Mala Patel)

94.    Plaintiffs repeat and reallege paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95.    As a result of the actions of defendants Medlink Services, Inc., Amrish, and Mala, and each of them, as set forth herein above, said defendants have violated the implied covenant of good faith and fair dealing in their contract with Dr. Cerabona, and as a result thereof, have damaged Dr. Cerabona in an amount believed to exceed $300,000.

96.    As a result of the actions of defendants Medlink Services, Inc., Amrish, and Mala, and each of them, as set forth herein above, said defendants have violated the implied covenant of good faith and fair dealing contained in their contract with Dr. Merola, and as a result thereof, have damaged Dr. Merola in an amount believed to exceed $1.7 million.

**WHEREFORE**, plaintiffs demand judgment against defendants as follows:

a.    As to Dr. Cerabona, for compensatory damages in an amount which exceeds $300,000, or such other sum as may be determined at the time of trial;

    b.      As to Dr. Merola, for compensatory damages in an amount which exceeds $1.7 million, or such other sum as may be determined at the time of trial;

    c.      As to Dr. Cerabona, for punitive damages in such amount to be determined at the time of trial;

    d.      As to Dr. Merola, for punitive damages in an amount to be determined at the time of trial;

    e.      For interest and costs of suit, including attorneys' fees; and

    f.      For such other and further relief as may be just and proper.

Dated:  April 8, 2019
        New York, NY

Yours, etc.,

**FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P.**

By: Michael L. Chania

Michael L. Anania (MA-2206)
Catherine B. Altier (CA-5981)
Wall Street Plaza
New York, New York 10005-1875
Tel.: (212) 269-4900
*Attorneys for Plaintiffs*